# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 01 C 681 | **DATE** | 7/18/2002 |
| **CASE TITLE** | Asif H. Khan vs. Hospital Laundry Services, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to enforce settlement agreement [53-1, 56-1] is denied. Settlement conference set for 7/23/02 at 2:00 p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| ✓ | Copy to judge/magistrate judge. |

courtroom deputy's initials: DK

Date/time received in central Clerk's Office

JUL 19 2002 date docketed
7/17/2002 date mailed notice

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ASIF H. KHAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 01 C 0681 |
| ) | |
| vs. ) | Magistrate Judge Morton Denlow |
| ) | |
| HOSPITAL LAUNDRY SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant's motion to enforce settlement agreement. Defendant contends the parties reached a settlement agreement. Although Plaintiff acknowledges serious settlement negotiations were underway, he denies an agreement was reached. This Court conducted an evidentiary hearing on July 9, 2002. The following constitute the Court's findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### A. THE PARTIES

1. Plaintiff, Asif H. Khan ("Plaintiff" or "Khan"), is employed by Defendant Hospital Laundry Services, Inc. ("HLS" or "Defendant"). Khan is of foreign descent and is not fluent in English. He testified at the hearing.

## B. PRIOR LITIGATION BETWEEN THE PARTIES

2. In April 1998, the parties settled a national origin discrimination lawsuit (Case No. 97 C 5164) filed by Plaintiff. (Am. Comp. Ex. A).

3. Under the settlement agreement, Plaintiff was transferred to the unionized mechanic trainee program, credited with six months experience, and given an initial raise to $8.50 per hour. (Am. Comp. Ex. A, ¶ 1a.) The settlement agreement also provided that Plaintiff could be demoted to his previous cart repair position if he did not progress adequately toward becoming a mechanic. (Am. Comp. Ex. A, ¶ 1e.)

4. In September 2000, Defendant demoted Khan to his cart repair position.

## C. CURRENT LITIGATION BETWEEN THE PARTIES

5. On January 31, 2001, Plaintiff filed this action against Defendant alleging a breach of the settlement agreement arising out of the prior litigation.

6. Thereafter, Plaintiff filed an amended complaint adding claims for age discrimination and retaliation.

7. Following completion of discovery, Defendant filed a motion for summary judgment.

8. On May 3, 2002, Judge Elaine E. Bucklo entered an order denying Defendant's motion for summary judgment as to the breach of contract claim (Count I) and the Title VII retaliation claim (Count II). According to Judge Bucklo's order, Plaintiff abandoned his age discrimination claim. (Count III).

9.  As part of her May 3, 2002 order, Judge Bucklo set a May 24, 2002 date for the filing of the final pretrial order, a deadline of June 7, 2002 for the filing of responses to any motions in limine, a pretrial conference date of June 26, 2002, and a trial date of August 12, 2002.

## D. SETTLEMENT NEGOTIATIONS

10. Faced with a trial, the attorneys commenced work on the final pretrial order and embarked upon serious settlement negotiations.

11. Plaintiff was represented by two sole practitioners: John F. O'Meara ("O'Meara") with an office in Chicago and Charles D. Boutwell ("Boutwell") with an office in Northbrook. O'Meara testified at the evidentiary hearing on the motion to enforce settlement. Boutwell appeared and conducted O'Meara's examination.

12. Defendant was represented by James A. Burns, Jr. ("Burns") of KMZ Rosenman with offices in Chicago. Burns testified at the evidentiary hearing.

13. All three attorneys practiced law for a number of years and were experienced in litigation.

14. On May 15, Burns and Boutwell spoke by telephone concerning two alternative methods of settling the case: (1) payment of a lump sum from Defendant to Plaintiff in exchange for Plaintiff's resignation and a full release; or (2) payment to Plaintiff of his back pay claims, an agreement to pay Plaintiff a higher wage in his current cart repair position, and an agreement to arbitrate, rather than litigate, any future claims. The attorneys also discussed

3

a confidentiality requirement. Boutwell said he would convey these offers to his client and discuss it with O'Meara.

15. On May 20, O'Meara called Burns to follow up on the settlement discussions. O'Meara had been updated by Boutwell. Burns and O'Meara reviewed the two alternatives. O'Meara told Burns that he believed Khan would prefer to leave HLS and suggested that Khan would be willing to accept $200,000 in exchange for a resignation and a full release.

16. On May 22, after not being able to reach O'Meara for several days, Burns left Boutwell a voice-mail message on behalf of HLS offering Khan $80,000 in exchange for a full release and resignation. Burns later left voice-mail messages for both O'Meara and Boutwell asking them to respond as soon as possible because Burns was leaving town for the Memorial Day weekend.

17. On May 22, Boutwell mailed Burns a letter enclosing a first draft of the pretrial order and a counter-offer to the $80,000 offer. (DX1). The counter-offer was for a $180,000 lump-sum payment and other conditions. Although Boutwell's letter stated "Mr. Khan would agree to accept a lump sum of $180,000....," in fact neither Boutwell nor O'Meara had received such authority from Mr. Khan as of May 22. Khan was not sent a copy of Boutwell's letter.

18. After receiving Boutwell's letter of May 22 on May 28, Burns contacted his client to discuss settlement. Burns called Boutwell on May 28 and left a voice-mail message offering to split the difference and settle the case for $130,000 and indicating that his client

4

did not have a problem with any of the other terms. He then faxed a letter on May 28 to both Boutwell and O'Meara confirming the voice-mail message and urging them "to contact your client and call me so that we can see if [settlement] is possible." (DX2).

19. O'Meara met with Khan and one of his daughters sometime between May 22 and May 28. Khan advised O'Meara that he was not interested in a settlement in which he would net less than $100,000 while resigning.

20. On May 28, Burns spoke by telephone with O'Meara. O'Meara stated $130,000 was not good enough. Burns told O'Meara $180,000 was too high. Both attorneys agreed to go back to their clients to discuss the possibility of settling the case for a lump-sum payment of $150,000. O'Meara indicated he was scheduled to meet with his client that afternoon and would call Burns after the meeting.

21. On May 29, after not hearing from O'Meara, Burns called Boutwell. Boutwell told Burns that he did not believe O'Meara and Khan had met on the 28th. Boutwell told Burns that $150,000 was not acceptable but believed his client would accept $160,000, which Burns rejected. Burns believed Boutwell had authority to settle the case for $160,000. Burns also rejected Boutwell's overtures to settle the case at $155,000. Burns told Boutwell he could not get more than $150,000. The attorneys also discussed how to divide any settlement proceeds: one check for back pay; one check for compensatory and punitive damages; and one check for attorney's fees.

22. On May 30, O'Meara called Burns to discuss whether there was a way to minimize the tax consequences of any settlement to Khan. O'Meara advised Burns that he planned to talk to a tax lawyer in the hope a way could be found to minimize the tax consequences of any settlement to Khan.

23. With the deadline for the final pretrial order staring the parties in the face, Burns was extremely anxious to conclude the settlement. On May 30, he once again faxed a letter to O'Meara and Boutwell urging them to respond to the outstanding settlement offer and reviewing the history of the negotiations to date. He also requested Plaintiff's counsel to file a motion to extend the final pretrial order date. (DX3).

24. On May 31, O'Meara called Burns to say he would be meeting with Khan that afternoon and expected to wrap up the settlement.

25. On June 3, O'Meara called Burns to advise him he had not met with Khan on May 31st but expected to meet with him later that day. O'Meara advised Burns that Khan wanted only $30,000 of any settlement to be allocated to back pay and also requested a neutral letter of reference. Burns advised O'Meara for the first time that his client was now willing to pay $160,000 to settle the case. No agreement was reached in this phone conversation because Burns was aware O'Meara intended to review all terms with Khan.

26. On June 3, Burns once again faxed a letter to O'Meara and Boutwell confirming Defendant's willingness to treat $30,000 of any settlement payment as back pay and agreeing to provide neutral references. The letter ended with the following paragraph:

6

> Finally, this will confirm that Mr. O'Meara will contact Judge
> Bucklo's clerk today to report that the parties are very close to
> settling, and fully expect to report to the Court within the next
> day or two that they have done so. I understand that Mr.
> O'Meara will be meeting with Mr. Khan later today and will call
> me then.

DX4.

27. The series of negotiations between counsel for the parties and Burns' letter of June 3 make clear that the attorneys recognized that a final meeting between Khan and his attorneys was a necessary precondition to a final agreement. Because of the prior litigation between the parties and Khan's difficulties with the English language, the attorneys were aware that a person to person meeting between Khan and his attorneys was necessary to obtain authority for counsel to enter into a final agreement with Burns.

28. On June 3, O'Meara met with Khan and one of his daughters. Khan advised his attorney he was no longer interested in the resignation alternative. He wanted to remain an employee for a couple more years and was willing to accept a lesser settlement amount to do that. At no time did Khan ever authorize his attorneys to settle the case for $160,000 in exchange for a resignation.

29. On June 4, O'Meara advised Burns he would have to meet with Khan again and would do so within a day or two.

30. On June 6, O'Meara called Burns to advise him Khan was not interested in the resignation alternative. Burns accused O'Meara of reneging on a settlement.

31. On June 6, HLS filed this motion to enforce settlement.

## II. <u>CONCLUSIONS OF LAW</u>

32. This Court has jurisdiction because the parties have executed limited consents to have this Court decide the motion to enforce settlement agreement. 28 U.S.C. § 636(c).

33. HLS has the burden of proving the existence of all of the elements of a contract. *Hyde Park Union Church v. Curry*, 942 F.Supp. 360, 363 (N.D. Ill. 1996).

34. Under Illinois law, a binding agreement requires a meeting of the minds or mutual assent as to all material terms. *Abbott Laboratories v. Alpha Therapeutic Corporation*, 164 F.3d 385, 388 (7th Cir. 1999).

35. The governing principles are set forth by the Illinois Supreme Court in *Brewer v. National Railroad Passenger Corporation*, 165 Ill.2d 100, 105, 649 N.E.2d 1331, 1333-34 (1995):

> The authority of an attorney to represent a client in litigation is separate from and does not involve the authority to compromise or settle the lawsuit. An attorney who represents a client in litigation has no authority to compromise, consent to a judgment against the client, or give up or waive any right of the client. Rather, the attorney must receive the client's express authorization to do so. [citations omitted].
>
> Where a settlement is made out of court and is not made part of the judgment, the client will not be bound by the agreement without proof of express authority. This authority will not be presumed and the burden of proof rests on the party alleging authority to show that fact. (*Danziger,* 204 Ill. at 149, 68 N.E. 534). Further, in such a case, opposing counsel is put on notice to ascertain the

attorney's authority. If opposing counsel fails to make inquiry or to demand proof of the attorney's authority, opposing counsel is put on notice to ascertain the attorney's authority. If opposing counsel fails to make inquiry or to demand proof of the attorney's authority, opposing counsel deals with the attorney at his or her peril. *McClintock*, 168 Ill. at 392, 48 N.E. 145.

36. The *Brewer* case is directly on point. In *Brewer*, the Illinois Supreme Court reversed the lower court decisions enforcing a settlement agreement requiring the plaintiff to resign his position as part of the settlement of the case. Although the settlement was reached in the judge's chambers, plaintiff was in the courthouse but was not present in chambers during the negotiations. Affidavits were filed that plaintiff never agreed to quit his job and plaintiff never authorized his attorney to make such an agreement and no one ever told plaintiff that his resignation was a settlement term. The Supreme Court rejected the lower court's presumption that plaintiff's attorney spoke for plaintiff on the issue of plaintiff's resignation. The Court held "an attorney's general authority to represent the client in litigation does not extend so far as to permit the attorney to waive the rights of the client." *Id.*, 165 Ill.2d at 106, 649 N.E.2d at 1334.

37. Neither O'Meara nor Boutwell received express authority from Khan to accept the settlement terms including his resignation.

38. The Court recognizes the frustration all counsel must feel in this case. Although they all may believe the proposed settlement is in Khan's best interests, the decision to accept or reject the settlement ultimately rests with the client. In this case, where Khan has difficulties expressing himself in English, Khan's counsel recognized the

importance of meeting face to face with Khan to review the proposed settlement and to obtain his agreement. Such assent was not given and therefore no settlement was reached.

### III. CONCLUSION

Clients are allowed to make up their own minds regarding a proposed settlement and they must live with the consequences. Whether Khan's decision to reject HLS' generous settlement offer proves to be wise only time will tell. Khan did not authorize his attorneys to accept Defendant's settlement offer. No settlement was reached. Because no settlement was reached, **Defendant's Motion to enforce settlement agreement is denied.**

**SO ORDERED THIS 18th day of July, 2002.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies delivered in open court or mailed to:**

Charles Drake Boutwell
3075 Plum Island Drive
Northbrook, IL 60062

John F. O'Meara
1737 North Wolcott Avenue
Chicago, IL 60622-1350

**Attorneys for Plaintiff**

James A. Burns, Jr.
Amy Moor Gaylord
Katten Muchin Zavis Rosenman
525 West Monroe Street
Suite 1600
Chicago, IL 60661-3693

**Attorneys for Defendant**